# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2409-17T4

NEW JERSEY DIVISION
OF CHILD PROTECTION
AND PERMANENCY,

     Plaintiff-Respondent,

v.

A.V.J.,

     Defendant,

and

J.R.H.,

     Defendant-Appellant.

_____

IN THE MATTER OF THE
GUARDIANSHIP OF
Z.J.H. and Z.A.J.,

     Minors.

_____

Submitted December 4, 2018 – Decided December 18, 2018

Before Judges Yannotti and Rothstadt.

On appeal from Superior Court of New Jersey, Chancery Division, Family Part, Essex County, Docket No. FG-07-0183-17.

Joseph E. Krakora, Public Defender, attorney for appellant (Richard Sparaco, Designated Counsel, on the brief).

Gurbir S. Grewal, Attorney General, attorney for respondent (Jason W. Rockwell, Assistant Attorney General, of counsel; Francesca E. Cheli, Deputy Attorney General, on the brief).

Joseph E. Krakora, Public Defender, Law Guardian, attorney for minors (Nancy P. Fratz, Assistant Deputy Public Defender, on the brief).

PER CURIAM

Defendant J.R.H. appeals from the Family Part's January 11, 2018 order terminating his parental rights to Z.J.H. (Zack) and Z.A.J. (Zadie),[1] who were six and two years old respectively at the time of the guardianship trial. We affirm substantially for the reasons stated by Judge Nora J. Grimbergen in her written decision issued with the order.

The evidence is outlined in detail in the judge's opinion. A summary will suffice here. Defendant is the biological father of Zack, born in August 2011, and Zadie, born in October 2014. On January 12, 2016, the children's late

---

[1] To protect privacy interests and for ease of reading, we use initials and fictitious names for the parents and children. Rule 1:38-3(d)(12).

mother, A.V.J. (Ann), obtained a restraining order against defendant that granted the parents joint legal custody of the children, with Ann having primary residential custody. The order granted defendant parenting time and ordered defendant to complete a parenting class.

Defendant made a referral to the Division of Child Protection and Permanency (Division) in January 2016 about Ann's exposing the children to a risk of harm by not providing adequate supervision. During the investigation of that referral, on January 30, 2016, the Division was contacted by local police after they found Ann and her boyfriend murdered in her apartment. At the time that police responded to the apartment, Zack and Zadie were located inside and were brought from there to a hospital to be assessed. The Division later learned that the children witnessed the murder.

The Division contacted defendant about taking custody of the children. Defendant initially stated that he was unavailable because he was caring for his cousin, but later met with workers at the hospital. After the county prosecutor and local police questioned defendant about the murders, on January 31, 2016, the Division initiated a Dodd removal[2] of the children and placed them in a non-

---

[2]  A Dodd removal is an emergent removal of a minor without a court order pursuant to the Dodd Act, N.J.S.A. 9:6-8.21 to -8.82. N.J. Div. of Child Prot. & Permanency v. T.U.B., 450 N.J. Super. 210, 215 n.2 (App. Div. 2017).

relative resource home pending further investigation. Defendant was eventually arrested and indicted for having committed the murders of Ann and her boyfriend, as well as another unrelated, additional killing.

After defendant's arrest, in May 2016, the Division placed the children with their maternal grandmother with the court's and defendant's approval. The children have continued to reside with their grandmother, who wishes to adopt them.

After the children were placed, they underwent psychological evaluations, engaged in therapy, and received various services through the Division. During a February 23, 2016 psychosocial evaluation, Zack expressed that he feared defendant. He was diagnosed as having post-traumatic stress disorder, and it was recommended that he receive trauma-informed individual therapy to help process the violent death of his mother and her boyfriend.

By September 2016, Zack's teachers reported that his behavior and demeanor were improving and he was becoming more comfortable at school. They recommended that he not be removed from his current environment. His therapist reported that Zack attended twenty individual sessions, had developed a rapport with his therapist, and was learning to express his feelings, such as fear and anger, in a safe way. On January 17, 2017, Zack's therapist reported

4

that Zack had "recreated scenes where people are being physically hurt, controlled and made to feel fearful. He has also recreated scenes where a woman who he calls mom is shot by a man who he identifies as his father, and then his father goes to jail." The therapist noted that Zack had begun to gain a sense of stability and safety and recommended that any visits with defendant be done in a "predictable and well thought out way as to respect how it will affect [Zack]'s feelings of safety."

Zack underwent a second psychosocial evaluation on April 13, 2017, in which he revealed that defendant had "touched his penis with his hand, one time, over [Zack]'s clothes, when [Zack] was four." He also stated that defendant once pointed a gun at his (Zack's) penis. Zack displayed a great deal of anger toward defendant and was experiencing symptoms of anxiety, withdrawal, depression, nightmares, and flashbacks. It was recommended that Zack participate in individual therapy with a mental health professional with expertise in sexual abuse. On June 13, 2017, Zack's counselor provided another update and recommended that he continue individual therapy.

Zadie also received therapeutic treatment. Her therapist reported that she began treatment due to her refusal to separate from her grandmother at home and "her constant need to be held, her increasing nightmares, and difficulties

sleeping at night." The therapist indicated that she had become increasingly verbal and expressed anger and aggression when Ann was mentioned. It was recommended that Zadie would benefit from continued therapy to help her process and manage her feelings.

On September 26, 2017, Dr. Mark Singer, Ed.D conducted a bonding evaluation between Zack and Zadie and their grandmother. Along with the input of Zack's therapist, Singer concluded that the children's grandmother was functioning as their psychological parent. Singer opined that "the significance of this relationship in terms of providing the child[ren] with a sense of security and stability cannot be over-stated." Significantly, Singer concluded that due to exposure to trauma, the children had "a heightened need [for stability] and this need is being fulfilled by their grandmother."

According to the doctor, if the children were separated from their grandmother, they would be subjected to "significant and enduring harm as the data does not suggest that there is any other consistent, healthy parental figure to mitigate such harm. This harm would be magnified by the previous trauma exposure, including the loss of their mother, relationship with their father, as well as exposure to violence." The doctor did not perform a bonding evaluation between defendant and the children.

6

In the meantime, while the children were in their grandmother's care and undergoing treatment, the Division provided services to defendant while he was incarcerated awaiting trial. A Division caseworker visited with him bimonthly. The Division did not facilitate visitation between defendant and the children in accordance with the recommendation of their therapist, but the Division provided defendant with monthly written updates and recent photos of the children and kept him informed about the identity of his caseworker. During one visit, defendant offered the caseworker photos and a card to give to the children; however, the children's therapist decided that it would be best for the children to not receive the items. Defendant initially refused services at the jail, but eventually agreed to attend parenting classes in August 2017 and was placed on a waiting list. He ultimately never attended. Defendant also refused to participate in a psychological evaluation arranged by the Division, citing his pending criminal charges.

The Division also engaged defendant in discussions concerning the children's placement. During the caseworker's visits, defendant stated that he approved of the children's placement with their grandmother, but wanted to have a connection with them. He offered his aunt, mother, and uncle as potential placements for the children, each of whom the Division ruled out.

The court entered a permanency order on January 27, 2017. The order approved the Division's plan for the children for termination of defendant's parental rights and adoption. In accordance with plan, on March 7, 2017, the Division filed a complaint seeking guardianship of the children.

Judge Grimbergen presided over the guardianship trial on November 29, 2017 and December 21, 2017. During the trial, the Division called its caseworker and Singer as witnesses. Defendant called the Director of Social Services for the jail, who testified that the facility would have provided parenting related services to defendant if he had requested them.

After considering the testimony and documents admitted into evidence, on January 11, 2018, Judge Grimbergen entered the guardianship judgment that ordered termination of defendant's parental rights. In her comprehensive twenty-six page written decision, the judge found that the Division had proven all four prongs of the best interests of the child test, N.J.S.A. 30:4C-15.1(a), and that termination of defendant's parental rights was in the children's best interests.

On appeal, defendant argues the following points.

POINT I

THERE WAS INSUFFICIENT EVIDENCE TO PROVE BY CLEAR AND CONVINCING EVIDENCE THAT THE STATUTORY

REQUIREMENTS OF N.J.S.A. 30:4C-15 AND 30:4C-15.1 WERE MET.

A. RELYING UPON SPECULATION AND CONJECTURE THAT J.R.H. WAS RESPONSIBLE FOR THE MOTHER'S DEATH, THE LOWER COURT ERRED IN FINDING THAT THE CHILDREN'S SAFETY, HEALTH OR DEVELOPMENT [H]AS BEEN OR WOULD CONTINUE TO BE ENDANGERED BY THE PARENTAL RELATIONSHIP UNDER THE FIRST PRONG.

B. THERE WAS INSUFFICIENT EVIDENCE UNDER THE SECOND PRONG TO SUPPORT THE TRIAL COURT'S CONCLUSION THAT THE DIVISION HAD PROVEN BY CLEAR AND CONVINCING EVIDENCE THAT THE DELAY OF PERMANENT PLACEMENT WILL ADD TO ANY POTENTIAL HARM TO THE CHILDREN.

C. DUE TO THE DIVISION'S FAILURE TO WAIT UNTIL RESOLUTION OF THE CRIMINAL CHARGES, THE DIVISION FAILED TO PROVE BY CLEAR AND CONVINCING EVIDENCE THAT IT OFFERED REASONABLE SERVICES TO J.R.H.

D. DUE TO THE FAILURE OF THE DIVISION TO WAIT UNTIL RESOLUTION OF THE CRIMINAL CHARGES, AND THE INABILITY OF J.R.H. TO SUBMIT TO A BONDING

9

EVALUATION, THERE WAS INSUFFICIENT EVIDENCE UNDER THE FOURTH PRONG TO PROVE BY CLEAR AND CONVINCING EVIDENCE THAT TERMINATION OF J.R.H.'S PARENTAL RIGHTS WILL NOT DO MORE HARM THAN GOOD.

On appeal, our review of the trial judge's decision is limited. We defer to her expertise as a Family Part judge, Cesare v. Cesare, 154 N.J. 394, 412 (1998), and we are bound by her factual findings so long as they are supported by sufficient credible evidence. N.J. Div. of Youth & Family Servs. v. M.M., 189 N.J. 261, 279 (2007) (citing In re Guardianship of J.T., 269 N.J. Super. 172, 188 (App. Div. 1993)). After reviewing the record, we conclude that the trial judge's factual findings are fully supported by the record and, in light of those facts, her legal conclusions are unassailable. We affirm substantially for the reasons stated by Judge Grimbergen in her thorough decision.

We conclude that defendant's arguments challenging Judge Grimbergen's determinations are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2409-17T4